DETROIT FEDERATION OF TEACHERS, LOCAL 231, AMERICAN
FEDERATION OF TEACHERS, AFL-CIO v BOARD OF EDUCATION
OF THE CITY OF DETROIT

1. Labor Relations—Residency—Conditions of Employment—
    Mandatory Bargaining.

    Residency as a condition of hire which ceases to exist as a
    condition of employment once a job applicant is hired is not a
    continuing condition of employment which is a mandatory
    subject of collective bargaining.

2. Appeal and Error—Labor Relations—Residency—Status Pro-
    gression—Continuing Condition—Findings of Fact.

    A policy of a school board that emergency substitute teachers
    who were nonresidents of the school district were not to be
    retained beyond 19 days, which defeated the eventual progres-
    sion of those teachers from emergency substitute status to full-
    contract teacher status, may constitute a continuing condition
    of employment which is a mandatory bargaining subject; there-
    fore, failure of the Employment Relations Commission to make
    findings of fact on this issue prevents proper appellate review
    and requires remand.

Appeal from the Employment Relations Com-
mission. Submitted June 18, 1975, at Detroit.
(Docket No. 22500.) Decided October 14, 1975.
Leave to appeal applied for.

Complaint by the Detroit Federation of Teach-
ers, Local 231, American Federation of Teachers,
AFL-CIO, against the Board of Education of the
School District of the City of Detroit before the
Employment Relations Commission alleging unfair
labor practices. From a portion of the decision and

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Domicil § 44.

order, the Federation of Teachers appeals. Affirmed in part but remanded for further hearing.

*Patmon, Young & Kirk, P. C.* (by *Ulysses W. Boykin, III),* for the Board of Education.

*Marston, Sachs, O'Connell, Nunn & Freid,* for the Federation of Teachers.

Before: T. M. BURNS, P. J., and QUINN and M. J. KELLY, JJ.

T. M. BURNS, P. J. On March 12, 1974, the Board of Education of the School District of the City of Detroit (hereinafter the Board) adopted a resolution requiring residency as a condition of employment for hire and promotion of all employees. The resolution stated in pertinent part:

"All employees in all classifications must be residents of the School District of the City of Detroit at the time of promotion and at the time for hire, except that new hires in shortage areas, may be hired on a temporary basis, while nonresidents."

Subsequently, the Detroit Federation of Teachers (hereinafter the DFT), which represents regular and substitute teachers and others in the Detroit school system, filed unfair labor practice charges under § 10 of the Public Employment Relations Act (PERA), 1965 PA 379, as amended, MCLA 423.210; MSA 17.455(10), complaining of the Board's unilateral adoption of the resolution without prior bargaining.

After a full hearing, an administrative law judge found that the portion of the March 12, 1974, resolution which required residency in the city of Detroit as a condition for promotion for all employees of the Board was a unilateral act contrary

to the bargaining responsibilities of the Board insofar as the resolution dealt with promotions, but not insofar as it related to hiring or recruiting standards. The administrative law judge concluded that the bargaining obligation did not adhere to the portion of the resolution relating to time of hire and he further held that recruiting requirements are not mandatory bargaining topics. A recommended order was proposed requiring the Board to rescind its residency resolution of March 12, 1974, relating to promotions and remove any disqualification attached to any employee resulting from application of this part of the resolution.

The DFT filed exceptions to the administrative law judge's ruling relating to bargaining not being required for conditions of recruitment or hire and the Board filed exceptions to the remainder of his decision. The matter was submitted to the entire Michigan Employment Relations Commission (hereinafter the Commission) on briefs and the Commission affirmed the administrative law judge and adopted his recommended order. The Commission unanimously agreed that the Board had acted unlawfully in the adoption of the resolution relative to promotions. However, the Commission divided two to one in affirming the administrative law judge with respect to his findings and conclusions relative to the hiring or recruitment issue. In his dissent Commissioner Ellman opined that there was a duty to bargain with respect to new hires of the Board on the residency question and that the DFT's bargaining unit had been adversely affected by the resolution as it pertained to a condition of hire. From that portion of the decision and order of the Commission relative to conditions of hire, the DFT appeals.

The DFT claims that the Board's duty under the

PERA to bargain regarding residency as a condition of employment includes the duty to bargain with respect to conditions of hire or recruitment. Thus, the DFT claims that residency is a condition of hire mandatorily subject to collective bargaining. We disagree. Noting that the recent case of *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), controlled the issue before it, the Commission correctly held that the residence requirement was invalid except insofar as it was a recruiting requirement, since by issuing a resolution declaring residency to be a condition of employment for promotion of all employees the Board rejected its bargaining obligation and violated the PERA.

As to DFT's contention that conditions of hire are a mandatory subject of collective bargaining, *DPOA v Detroit, supra,* decides this question adversely to DFT's claim. There the Supreme Court stated at 391 Mich 44, 61; 214 NW2d 803, 812:

"A recruiting requirement, whether it is age, mental competency, physical characteristics *or residency,* focuses on that point in time at which a candidate for employment is hired. At that moment the new recruit must meet established standards. Once an applicant has met these standards and has been hired as an employee, the 'recruiting requirements' as such do not continue to regulate his or her right to hold the job. Employment standards are, of course, lawful, but they must be treated as a term and condition of employment." (Emphasis added.)

Thus under *DPOA v Detroit, supra,* a residency requirement can only be valid as to the day of hiring. In the case at bar, the condition of hire, residency, does not continue to act as a condition of employment since it ceases to exist once a job applicant is hired. Consequently, under the cir-

cumstances of this case, it is not a continuing condition of employment and thus not a mandatory subject of collective bargaining.

However, while we affirm the holding of the Commission as the correct application of the law governing this case, we also are of the opinion that the Commission did not go far enough in its holding.

The DFT claims that employees designated as emergency substitutes (ES), who would under the DFT contract normally accrue emergency substitute with replacement status (ESRP) with improved job security, pay and benefits after 20 days in an ES assignment, are being prevented from attaining such accrual by the Board's interruption of that assignment. A review of the administrative law judge's findings of fact reveals the following:

"Charging Party DFT presented substantial testimony in support of its charge. Among the matters pertaining particularly to this unit, the record shows that there are no promotions, as such, within the classification of regular contract teacher. However, within the DFT unit there are certain differences in status of teaching personnel which have been, or could be, affected by the residency requirement. Teachers may be classified in one of three categories: emergency substitute (ES), emergency substitute with regular position (ESRP) and contract teachers. Under the contract, the ES is an employee who is called to work on a daily basis with no obligation on the part of the Respondent to call the employee. However, under the DFT contract, after teaching over 20 days, the ES progresses to the status of ESRP. The ESRP who remains in that status teaching for 100 days is entitled to a full personal teaching contract and becomes a regular teacher under the DFT contract entitled to all the rights that flow from that. Testimony indicated that a policy had been promulgated that ES's were not to be retained beyond 19 days if they were non-residents. Such a policy would

defeat the progression of teachers from ES to ESRP and eventually full-contract teacher status."

Thus while the administrative law judge made findings of fact relative to this issue, nowhere in the Commission's opinion do we find any conclusions as to whether the emergency substitutes (ES) are being subjected to a continuing condition of employment or whether the residency requirement as to them is only a condition of hire or recruiting standard. Since the Commission failed to expressly answer this important question we cannot now consider this argument since there is insufficient information from which we can draw a conclusion. Therefore, this matter must be remanded back to the Commission for further proceedings from which a conclusion shall be drawn as to whether or not, as to the emergency substitutes, the residency requirement is a continuing condition of employment which is a mandatory bargaining subject.

Affirmed in part; remanded to the Michigan Employment Relations Commission for further proceedings not inconsistent with this opinion. No costs, a public question being involved.